# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**CHARLES DUPONT,**

**Plaintiff,**

**-vs-**                                                    **Case No.  2:04-cv-221-FtM-DNF**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

# ORDER

The Plaintiff Charles Dupont seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for Disability Insurance Benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R.

-1-

§§404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

The procedural history of this case is more complex due to the Appeals Council consolidating two of Plaintiff's cases.  On October 14, 1999, Plaintiff filed an application for Social Security Disability Insurance Benefits[1] asserting a disability onset date of March 1, 1999.  (Tr. p. 83-88).  His claim was denied initially and upon reconsideration.  (Tr. p. 72-75).  A hearing was held before Administrative Law Judge Rubin Rivera, Jr. on February 15, 2001, but it was continued until March 15, 2001.  (Tr. p. 47-71).  The ALJ's decision dated July 11, 2001, denied Plaintiff's claim for benefits finding that he could return to his past relevant work as a plumber.  (Tr. p. 19-26).  Plaintiff sought review by the Appeals Council, which denied review on November 30, 2001. (Tr. p. 4-5).

Plaintiff filed a Complaint in the United States District Court for the Middle District of Florida, Fort Myers Division, Case No. 2:04-cv-24-FtM-DNF.  Plaintiff raised four issues in that case:

> (1) The ALJ incorrectly identified Plaintiff's past work as an occupation that he never performed and in doing so committed a reversible error by failing to follow the sequential evaluation; (2) the ALJ's decision is contrary to law and is unsupported by substantial evidence because it gave controlling weight to non-examining medical sources while inappropriately rejecting the opinions of Plaintiff's treating physicians; (3) the ALJ's finding that Plaintiff is capable of "medium work" cannot be established by substantial evidence; and (4) the ALJ committed a reversible error of law when he deprived plaintiff of due process by revising the prior determination without evidence or explanation.

(Tr. p. 263).  The Court found that the ALJ properly considered Plaintiff's RFC and properly determined that he was capable of performing medium work with certain limitations. (Tr. p. 266).  The Court found that the ALJ did not err in considering the issue of whether Plaintiff could perform his

---

[1] An Amendment to the Application was also filed.  (Tr. p. 86).

past relevant work. (Tr. p. 267).  Finally, the Court found that the ALJ erred in concluding that Plaintiff could do some, but not all, of his past job duties, which would amount to a different job. (Tr. p. 268).  The Court remanded the case, instructing the ALJ to take further evidence regarding Plaintiff's past relevant work. (Tr. p. 268-9).  If the ALJ determined that Plaintiff could not perform his past relevant work, then the Court required the ALJ to proceed to Step Five of the sequential evaluation process and call a vocational expert to testify.  (Tr. p. 269).  Judgment was entered on February 21, 2003. reversing and remanding the case.  (Tr. p. 258).

On April 5, 2003, the Appeals Council entered an Order which remanded the case to the ALJ. (Tr. p. 270-1).  In the interim, Plaintiff filed a subsequent claim for disability insurance benefits on April 11, 2002, which was denied by the State Agency. (Tr. p. 270).  The Appeals Council determined that the remanded claim rendered the subsequent claim duplicative or "causes it to involve an overlapping period of time" and consolidated the two claims.  (Tr. p. 270-71).  A hearing was held before ALJ Ruben Rivera, Jr. on January 12, 2004.  (Tr. p. 201-254).  The ALJ's decision dated February 12, 2004, denied Plaintiff's claim for benefits (Tr. p. 189-200).  At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (Tr. p 198).  At Sept 2, the ALJ found Plaintiff had degenerative joint disease with low back pain, which is considered "severe" based on the requirements in the Regulations. (Tr. p. 199).  At Step 3, the ALJ found Plaintiff's impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. p. 199).  The ALJ did not find Plaintiff's allegations regarding his limitations to be totally credible. (Tr. p. 199).  At Step 4, the ALJ determined that Plaintiff was not able to perform his past relevant work as an owner/boss of a plumbing company. (Tr. p. 196, 199).  At Step 5, based upon a residual functional capacity ("RFC") for a significant range of medium work,

Plaintiff's age, education, training, and transferable skills, the ALJ applied the Medical-Vocational Guidelines, and found that there existed a significant number of jobs in the national economy that Plaintiff could perform.  (Tr. p. 199).   Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. p. 199).  On April 14, 2004, Plaintiff sought review of this decision by the United States District Court.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *Crawford v. Commissioner of Social* Security, 363 F.3d 1155, 1158 (11th Cir. 2004), *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Crawford,* 363 F.3d at 1158,  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Id*. at 1158-9,  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Shinn ex rel. Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1282 (11th Cir. 2004),  Crawford, 363 F.3d at 1158,  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts and Conclusions of Law

### A. Background Facts

Plaintiff was born on April 4, 1938, and was sixty-five years old on the date of the hearing. (Tr. p. 83). He has a twelfth grade education, and completed high school. (Tr. p. 213). His past relevant work experience was as a plumber, specifically prior to his onset date of March 1, 1999, he was working in commercial industrial plumbing. (Tr. p. 214). At times he was required to lift as much as 250 pounds, and occasionally between three and four hundred pounds. (Tr. p. 214-215). He had to lift heavy objects every day. (Tr. p. 216). His past relevant work required standing, kneeling and climbing ladders. (Tr. p. 217). His prior job required him to use his hands most of the time. (Tr. p. 218). Plaintiff was self-employed. (Tr. p. 223). He did mainly heavy construction plumbing. (Tr. p. 226).

He stopped working when the pain in his back got worse. (Tr. p. 227-8). The pain was in his lower back and radiated down through his legs. (Tr. p. 228). The pain was continuous. (Tr. p. 228). He also experienced numbness in his feet, toes, hands, and fingers. (Tr. p. 228). The numbness affected his balance and ladder-climbing. (Tr. p. 228). The numbness also affected his ability to grip and hold a tool. (Tr. p. 229). He testified that was unable to lift a gallon of milk without feeling pain. (Tr. p. 229-30). He took medication for the pain, but it made it difficult for him to concentrate. (Tr. p. 230). To relieve the pain, he alternated between sitting and standing and took breaks. (Tr. p. 231).

His doctor recommended muscle relaxers and pain medicine. (Tr. p. 232). He also recommended that he see a nuerosurgeon, but Plaintiff had not due to the expense. (Tr. p. 232-3).

Plaintiff has a detached retina, and a blind spot in his left eye. (Tr. p. 233). Plaintiff testified that he has depression due to not being able to work. (Tr. p. 233). Plaintiff also suffered from headaches. (Tr. p. 234).

### B.  Vocational Expert Testimony

A Vocational Expert, Everett L. Tessmer testified at the hearing before the ALJ. (Tr. p. 237). Mr. Tessmer testified that Plaintiff's past relevant work was as a construction plumber which is classified as heavy work. (Tr. p,. 239). Mr. Tessmer testified that Plaintiff could not return to his past relevant work because of the lifting requirement. (Tr. p. 240). The ALJ then presented Mr. Tessmer with two different hypothetical questions. (Tr. p. 241).

> We know his age to be between 60 and 65. He has a high school education and the person who has the same work experience as the Claimant has. [sic] In the first hypothetical would you please consider that this Claimant or this person would have significant psychiatric impairments or limitations. He has extreme functional limitations in his activities of daily livings. [sic] He has marked restrictions in maintaining social functioning, also in concentration, attention. In addition to that consider in this first hypothetical that he is to do no lifting, no prolonged bending, no prolonged standing, no prolonged sitting, no prolonged walking, significant pain complaints. [sic] So if we consider these limitations and restrictions, both physical and mental, and this person I'm describing in the first hypothetical, would you feel he could perform any other kind of work?

(Tr. p. 241). Mr. Tessmer responded that the individual could not perform any other work. (Tr. p. 241). The ALJ then presented a second hypothetical:

> In the second hypothetical question we have the same individual, the same education, work background and age. In the second hypothetical he is strictly limited to medium type work. Are you familiar with the definition of medium type work?

-6-

A.  I am, Your Honor.

Q.  Only that, no more limitations, just that, in this hypothetical.  Would you be able to find or define all the work that he could perform?

(Tr. p. 241-242).  Mr. Tessmer responded yes.  Mr. Tessmer then asked if there were significant psychological impairments, and the ALJ said no. (Tr. p. 242).  Mr. Tessmer found that Plaintiff could work as a plumbing supervisor, material lister, dispatcher, or claim examiner.  (Tr. p. 242-245).  On cross examination, Mr. Tessmer testified that if a person's fingers were numb that might affect his ability to be a claim examiner.  (Tr. p. 246-248).  If an individual had to alternate sitting and standing every hour, that would reduce his capacity to do a sedentary job.  (Tr. p. 248).   If Plaintiff was unable to lift 10 pounds, then there would be difficulties in working at a sedentary job.  (Tr. p. 249).   If Plaintiff were unable to concentrate due to his pain, then that would cause significant problems on a job.  (Tr. p. 250).  Further, if Plaintiff had to lie down frequently to alleviate his pain, this requirement would eliminate him from any jobs.  (Tr. p. 251).

### C.  Medical History

On December 31, 1997,  Plaintiff was evaluated at Physical Therapy Associates, Inc. (Tr. p. 117).  Plaintiff reported having pain when he stood and walked.  (Tr. p. 117). His physical therapy goal was to decrease the pain, and establish an exercise program over a 3 week period.  (Tr. p. 117). On January 20, 1998, the Physical Therapy Associates, Inc. completed a progress report.  (Tr. p. 115). At first Plaintiff noticed an improvement, however, on the date of the report, Plaintiff stated that he had no improvement in his pain.  (Tr. p. 115).  On February 2, 1998, Plaintiff had an MRI done.  (Tr. p. 119).  The MRI showed a large disc fragment in the far lateral portion of the right L3-4 neural foramen impinging on the right L3 nerve root; small probable free disc fragment in the right S1 lateral

-7-

recess with mild posterior displacement of the right S1 nerve root; severe degenerative changes in the L2-3, L3-4, L4-5, and L5-S1 discs; mild levoscoliosis centered at L3-4; and no central stenosis, fracture, tumor or infection.. (Tr. p. 120-21).

On October 27, 1999, Ron M. Koppenhoefer, M.D. completed a letter. (Tr. p. 127). In that letter, Dr. Koppenhoefer stated that he last saw Plaintiff on August 25, 1997, and at that time Plaintiff was complaining of intermittent numbness. (Tr. p. 127). Initially, Plaintiff went to Dr. Koppenhoefer because of pain in his cervical spine. (Tr. p. 127). Dr. Koppenhoefer diagnosed Plaintiff with cervical radiculopathy left C8 and cervical osteoarthritis. (Tr. p. 127). On August 25, 1997, Dr. Koppenhoefer reported that Plaintiff's neurological exam was normal, and that he had very few physical limitations. (Tr. p. 127). Dr. Koppenhoefer could not comment on Plaintiff's condition as of the date of the letter. (Tr. p. 127).

On November 22, 1999, Plaintiff saw Ramiah Krishnan, M.D. for an evaluation. (Tr. p. 131). Dr. Krishnan diagnosed Plaintiff with having degenerative joint disease involving the lumbosacral spine, and degenerative joint disease of the right knee. (Tr. p. 131-32). The examination revealed crepitus in the right knee, but gait was normal. (Tr. p. 132). Plaintiff's neurological examination was normal. (Tr. p. 132). Plaintiff reported that he had two back surgeries, one in 1977, and another in 1987. (Tr. p. 131).

On February 17, 2000, May 8, 2000, and January 1, 2001, Plaintiff went to the Family Health Centers of Southwest Florida, Inc. ("Family Health Center") complaining of back pain. (Tr. p. 185). Plaintiff was prescribed medication. (Tr. p. 183).

An MRI was done on July 18, 2000. (Tr. p. 187). The MRI showed an advanced desiccation of the L3-4 and L5-S1 disc levels. It showed more moderate desiccation of the L2-3 and L4-5

intervertebral discs.  The five lumbar vertebral bodies were of normal height and well aligned with normal marrow signal.   It showed a disc bulge at L3-4, and L5-S1,  and left-sided hemilaminotory defect at L4-5.  (Tr. p. 167).

On February 6, 2001, William Mayer, D.C. completed a Medical Evaluation Form.  (Tr. p. 152-53).  Dr. Mayer found that Plaintiff's physical activities were substantially limited.  (Tr. p. 152). He found Plaintiff to have severe problems sitting, standing, walking, bending, stooping, and squatting.  (Tr. p. 152).  He reported that Plaintiff had to lie down during the day to reduce pain.  (Tr. p. 152).  He also found that Plaintiff's condition did not prevent him from working at a job which allowed for sitting and standing at will.  (Tr. p. 152).  He found Plaintiff limited due to the numbness in his hands. (Tr. p. 152).  Dr. Mayer reported that Plaintiff's pain possibly interfered with Plaintiff's ability to concentrate.  (Tr. p. 153).  He concluded that Plaintiff was disabled from manual labor since March 1, 1999.  (Tr. p. 153).  Dr. Mayer also reported that Plaintiff has pain, significant limitation of motion in the spine, and significant motor loss with muscle weakness and sensory and reflex loss.  (Tr. p. 154).

On March 11, 2002, Plaintiff went to Family Health Centers for back pain.  (Tr. p. 295).  He was taking Tylenol for it and using ice packs.  (Tr. p. 295).  Plaintiff also complained of being jumpy and not able to relax.  (Tr. p. 295).  He was diagnosed with generalized anxiety and prescribed Zoloft. (Tr. p. 295).   On May 13, 2002, Plaintiff went to Family Health Centers for chronic back pain and generalized anxiety.  (Tr. p. 294).  On December 17, 2002, Plaintiff went to Family Health Centers for medication refills and a check-up.  (Tr. p. 293).  On March 11, 2003, Plaintiff went to Family Health Centers due to back pain.  (Tr. p. 292).   Medication was prescribed for him.  (Tr. p. 292).

On May 30, 2005, Plaintiff was examined by Mark Rodgers, M.D.  (Tr. p. 301).  Plaintiff complained of pain with prolonged sitting, standing, walking, bending and lifting. (Tr p. 301). Plaintiff complained of pain radiating from his back to his legs, and numbness in his limbs.  (Tr. p. 301).  Dr. Rogers found Plaintiff's musculoskeletal system to be normal, with no muscle spasms.  (Tr. p. 302).  Plaintiff's gait and balance were normal.  (Tr. p. 302).  Dr. Rogers prescribed moist heat, and nonsteroidal anti-inflammatories along with an exercise program.  (Tr. p. 302)

On May 30, 2003, a Psychiatric Review Technique was completed by Dr. Rogers (Tr. p. 281-284).  Dr. Rogers found Plaintiff to have depressive syndrome which was characterized by sleep disturbance, psychomotor agitation, deceased energy, and difficulty concentrating or thinking.  (Tr. p. 281). He found Plaintiff to be extremely restricted in activities of daily living, markedly restricting in maintaining social functioning, and maintaining concentration, persistence, or pace.  (Tr. p. 281). Plaintiff was rated fair in making occupational adjustments due to his limitation based on his chronic back pain which disrupts concentration.  (Tr. p. 282).  Plaintiff was rated fair in his making performance adjustments due to the back pain, and  was also rated fair in making personal-social adjustments. (Tr. p. 282-83).  Dr. Rogers found Plaintiff limited in lifting, bending, standing, sitting and walking.  (Tr. p. 283).  Dr. Rogers concluded that Plaintiff was disabled from substantial work since his onset date.  (Tr. p. 283).

Dr. Rogers also completed a Medical Evaluation Form on May 30, 2003. (Tr. p. 284).  He found Plaintiff had severe problems sitting, standing walking, lifting up to 10 pounds, bending, stooping, squatting and reaching.  (Tr. p. 284).  He found Plaintiff had to lie down to reduce pain, and could not use his hands for pushing and pulling or fine manipulations due to hand tremors.  (Tr. p. 284).  Dr. Rogers found Plaintiff's pain interfered with Plaintiff's concentration, ability to carry out

-10-

instructions, and ability to remember instructions. (Tr. p. 285).  Dr. Rogers concluded Plaintiff was limited as to heights, moving machinery, and vibrations. (Tr. p. 285).  Plaintiff's other disabling conditions were his chronic back pain, disc bulge, and laminectomy.  (Tr. p. 285).  Dr. Rogers concluded that Plaintiff was disabled from substantial work since March 1, 1999.  (Tr. p. 285).  Dr. Rogers found Plaintiff to have  joint pain when walking, and numbness as well.  (Tr. p. 286).   Dr. Rogers noted that Plaintiff had nerve root compression and lumbar spinal stenosis.  (Tr. p. 288).

On November 17, 2003, Plaintiff had an MRI.  (Tr. p. 289).  The radiologist concluded that there was foraminal stenosis at the L3-L4 and L4-L5 and less at L2-L3 and L5-S1 as well as disc bulge. (Tr. p. 290).   There was also facet arthropathy which was accentuated by the scoliotic curvature of the lumbar spine.  (Tr. p. 290).

### D.  State Evaluations

On December 10, 1999, a state agency reviewer completed a Physical Residual Functional Capacity Assessment form.  (Tr. p. 135-142).  The reviewer found Plaintiff able to lift 50 pounds occasionally, and 25 pounds frequently.  (Tr. p. 136).  He found Plaintiff able to stand and sit for 6 hours in an 8 hour work day, and had unlimited push pull operation.  (Tr. p. 136).  The reviewer found no postural limitations, manipulative limitations, visual limitations, communicative limitations, or environmental limitations.  (Tr. p. 137-39).  The reviewer concluded that Plaintiff has evidence of significant degenerative disc disease and that his pain was credible.  (Tr. p. 140).  The reviewer assigned Plaintiff an RFC of medium work due to his lumbar disc disease.  (Tr. p. 140).

On March 21, 2000, another state agency reviewer completed a Physical Residual Functional Capacity Assessment form.  (Tr. p. 144-151).  The reviewer found Plaintiff able to lift 50 pounds

occasionally, and 25 pounds frequently.  (Tr. p. 145).  He found Plaintiff able to stand and sit for 6 hours in an 8 hour work day, and had unlimited push pull operation.  (Tr. p. 145).  The reviewer found no manipulative limitations, visual limitations, communicative limitations, or environmental limitations.  (Tr. p. 147-48).  The reviewer did find that Plaintiff was limited to crawling occasionally. (Tr. p. 146).

### E.  Specific Issues

Plaintiff raises four issues on appeal.  As stated by Plaintiff, they are: (1) The ALJ committed reversible error when he failed to consider all of the plaintiff's severe impairments at Step 2 in the sequential evaluation and this resulted in a residual functional capacity assessment which was not supported by substantial evidence; (2) the ALJ committed reversible error in finding that Plaintiff was capable of medium work; (3) the ALJ failed to apply the correct legal standard when he afforded "great weight" to State Agency non-examining medical consultants while inappropriately rejecting the opinion of Plaintiff's treating physicians; and (4) the statements by the ALJ in his hypothetical to the vocational expert concerning Plaintiff's capacity for other work were not supported by substantial evidence and the ALJ failed to apply the correct legal standard regarding the transferability of skills for an individual of advanced age.

### 1.  Severe Impairments

Plaintiff asserts that the ALJ erred when he failed to consider Plaintiff's cervical impairment as a severe impairment at Step 2 of the Sequential Evaluation.  At Step 2, the ALJ found that Plaintiff's degenerative joint disease with low back pain was considered "severe" based on the requirements.  Plaintiff argues that the ALJ failed to consider severe Plaintiff's diagnosis of cervical

-12-

radiculopathy at C8 as well as cervical osteoarthrits and disc space decrease at C7-T1which was diagnosed by Dr. Koppenhoefer in August 1996.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It allows only claims based on the most trivial impairments to be rejected. *Id*. In the Eleventh Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). A claimant has to burden to show that his impairment is not so slight and its effect not so minimal, and this burden is mild. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Dr. Koppenhoefer stated in his letter dated October 27, 1999, that Plaintiff's neurological exam was normal, and that he had very little discomfort upon palpation. He stated that Plaintiff did well with physical therapy. Further Dr. Koppenhoefer concluded that Plaintiff has very few physical limitations. Although the standard for finding a "severe" impairment is low, Plaintiff has failed to meet this standard. Plaintiff's treating physician, Dr. Koppenhoefer found that he had few physical limitations from his cervical problems. Plaintiff failed to provide any medical evidence that his cervical impairment was severe. The ALJ did not err in determining that Plaintiff's cervical impairments were not "severe" impairments at Step 2 in the Sequential Evaluation.

**2. Residual Functional Capacity for Medium Work**

Plaintiff argues that the ALJ erred in determining that Plaintiff retained the residual functional capacity for medium work which involves lifting no more that 50 pounds occasionally, and 25 pounds frequently.  Plaintiff relies on his own testimony, the records of Dr. Koppenhoefer, the report of Dr. Krishnan, and an MRI.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments.  20 C.F.R. §404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id*.  In evaluating a claimant's residual functional capacity, the ALJ is obligated to consider all of the claimant's impairments, including subjective symptoms such as pain.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of 25 pounds. 20 C.F.R. §416.967(c).  A full range of medium work also entails standing or walking for 6 hours in an 8 hour day.  SSR 83-10.  Due to the lifting requirements, the full range of medium work usually requires bending or stooping.  SSR 83-10.

The ALJ has discretion to determine that a claimant's complaints of pain or other subjective symptoms are not credible.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  But, if the ALJ rejects a claimant's testimony, he or she must articulate reasons, based on substantial evidence, for refusing to credit a claimant's subjective pain testimony. *Wilson v. Barnhart*, 284 F.3d 1219, 1225, (11th Cir. 2002), *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).  If the ALJ fails to articulate the reasons for discrediting the subjective testimony of the plaintiff, then as a matter of law, the testimony must be accepted as true.  *Wilson v. Barnhart*, 284 F.3d at 1225, citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

-14-

The ALJ found Plaintiff's testimony was not fully credible concerning his limitations.  The ALJ noted that Dr. Krishnan found no motor, sensory or reflect deficits and no objective neurological deficits in November 1999.  He notes that there was only mild limitation of motion in the spine, hips, right knee and right shoulder.  Further, the ALJ stated that Plaintiff's gait was normal, and had a full range of motion of all extremities.

Plaintiff claims that  Plaintiff's degenerative joint disease with low back pain is substantiated by an MRI and Dr. Koppenhoefer's notes of February 3, 1998.  However, Dr. Koppenhoefer noted on Plaintiff's visit of August 25, 1997, that Plaintiff's neurological examination was normal, and that Plaintiff had very little discomfort and few physical limitations.

The ALJ considered the medical evaluations as well as Plaintiff's testimony.  He discredited Plaintiff's testimony based upon the medical evaluations.  For these reasons, the ALJ properly considered Plaintiff's RFC and determined he was capable of performing medium work, with postural limitations of climbing, balancing, stooping and crouching frequently and kneeling and crawling occasionally.  The ALJ did not err in determining that Plaintiff was capable of performing medium work.

### 3.  Weight of the Evidence

Plaintiff argues that the ALJ erred in giving great weight to the State Agency non-examining medical consultants and erred in rejecting the opinions of the treating physicians.  Ordinarily, an ALJ must give substantial or considerable weight to the testimony of a treating physician unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), *see also*, *Morrison v. Barnhart*, 278 F.Supp.2d 1331, 1334 (M.D. Fla 2003), *citing Broughton v. Heckler*, 776 F.2d 960,

-15-

961 (11th Cir. 1985).   An ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician and the failure to do so is reversible error.  *Id.*  For good cause to be shown, the ALJ must show that the opinion of the treating physician is not supported by the evidence or the treating physician's opinion is conclusory or inconsistent with the medical records. *Id.*   Further, a treating physician's opinion must be supported by medically acceptable clinical and laboratory diagnostic techniques to be given controlling weight.  *Patterson v. Chater*, 983 F.Supp. 1410, 1414 (M.D. Fla. 1997), *citing,* 20 C.F.R. §404.1425(e)*.*  If an ALJ fails to state a reasonable basis for the rejection of a treating physician's opinion, the opinion will be accepted as true as a matter of law.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

Plaintiff argues that the ALJ inappropriately discounted the evidence of Dr. Koppenhoefer in that Dr. Koppenhoefer reported that Plaintiff was experiencing pain in his cervical spine.  Plaintiff asserts that Dr. Koppenhoefer stated that he could not provide an assessment of Plaintiff's condition in 1999 because the last time he saw Plaintiff was in 1997.  Dr. Koppenhoefer had diagnosed Plaintiff with having pain in his cervical spine with radiation into his left arm going down to his fingers.  Dr. Koppenhoefer stated in his letter that physical therapy had helped Plaintiff and that on his last visit his neurological exam was normal.  The ALJ did not discount or reject Dr. Koppenhoefer's opinion, but rather reported it accurately.

Plaintiff also argues that the ALJ erred in rejecting Dr. Mayer's opinion as a treating physician and erred in rejecting his opinion because he is a chiropractor.  The ALJ considered Dr. Mayer's reports.  He discredited his report on the following grounds: 1) Dr. Mayer is not an acceptable medical source; and 2) Dr. Mayer's conclusion does not meet criteria necessary to meet the listing source.  Pursuant to 20 C.F.R. ¶404.1513(a), chiropractors are not considered an "acceptable source," and their

-16-

opinions are to be used as supplemental to the medical sources to better understand how an impairment affects the ability to work. *See*, *Crawford v. Commissioner of Social Security*, 363 F.3d 1555, 1160 (11th Cir. 2004). As a chiropractor, Dr. Mayer's opinion cannot establish the existence of an impairment as he is not an acceptable medical source. *Id*. Further, the ALJ found that Dr. Mayer's claim that Plaintiff had a 15 percent permanent physical impairment of the body as a whole based upon Listing 1.05C was not correct. The ALJ found that Plaintiff did not have the symptoms that were required to meet Listing 1.05C. The ALJ considered Dr. Mayer's reports and did not err in discounting them.

Plaintiff then argues that the ALJ gave improper weight to non-examining medical consultants. The reports on non-examining physicians do not constitute substantial evidence on which to base an administrative decision. *Bruet v. Barnhart*, 313 F.Supp.2d 1338, 1346(M.D. Fla 2004), *citing, Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985), *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ gave great weight to the opinions of the State agency doctors because these opinion were supported by the medical evidence and consistent with the record as a whole. The medical evidence by acceptable sources is very limited in the record. Dr. Koppenhoefer found Plaintiff's neurological exam was normal. Dr. Krishnan reported only a decreased range of lumbar and right knee motion and crepitus of the knee, but otherwise the exam was normal. The non-examining medical consultants's opinions were consistent with the medical evidence from acceptable

sources in the record.[2]   The ALJ did not give improper weight to the non-examining medical consultants.

### 4.  Hypothetical

Plaintiff argues that the ALJ's hypothetical to the vocational expert regarding Plaintiff's capacity for other work was not supported by substantial evidence.  Once the ALJ had determined that a claimant can no longer perform his past relevant work, the burden then shifts to the Commissioner "'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Jones v. Apfel*, 190 F.3d 1224, 1228-9 (11th Cir. 1999), citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  When the claimant has non-exertional impairments, such as pain, that significantly limits basic work skills, then reliance on the grids is inappropriate, and the Commissioner's preferred method of showing that a claimant can perform other jobs in the economy is through the testimony of a vocational expert.  *Jones v. Apfel*, 190 F.3d at 1229. In order for the testimony of a vocational expert to constitute substantial evidence,  the ALJ must pose a hypothetical question which includes all of the claimant's impairments.  *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002)*, citing Jones v. Apfel*, 180 F.3d at 1229.

Specifically, Plaintiff argues that the ALJ did not accurately describe Plaintiff's functional limitations, and the ALJ failed to apply the correct legal standard concerning the transferability of

---

[2]  Plaintiff also argues that the non-examining physician's report in inconsistent.  Plaintiff misquotes the report.  In the report, the reviewer states, "[Claimant] further alleges if he should try to lift anything or stand or walk that would cause severe pain in his legs, knees and back."  Plaintiff argued that the reviewer stated that "if he should try to lift anything or stand or walk that would cause severe pain in his legs, knees and back."  The reviewer was noting what Claimant stated, not opining concerning Plaintiff's medical condition.

skills for an individual of advanced age. Plaintiff reargues that the ALJ erred in finding that Plaintiff was capable of performing medium work. The Court has addressed this argument previously and found that the ALJ did not err in finding that Plaintiff could perform medium work.

Next, Plaintiff argues that the ALJ erred in not applying the correct legal standard concerning the transferability of skills for an individual of advanced age. The ALJ did provide the information of Plaintiff's age to the vocational expert. Plaintiff argues that special rules should apply, however, this special rule applies to individuals who "have a severe impairment(s) that limits you to no more than light work . . ." 20 C.F.R. 404.1568(d)(4). Plaintiff again argues that he is not capable of performing medium work. The Court has addressed this argument previously and found that the ALJ did not err in finding that Plaintiff could perform medium work. Therefore, the Court finds that the ALJ did not err in his hypothetical to the vocational expert.

### III. Conclusion

Accordingly, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Therefore, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this <u>10th</u> day of <u>August</u>, 2005.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

All Parties of Record

-19-